Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Adrian Gucovschi (SBN 360988)
**GUCOVSCHI LAW FIRM**
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

*Counsel for Plaintiff and Putative Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN SOLIDAY, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| EPETAH LLC D/B/A BALMBARE, | (DEMAND FOR JURY TRIAL) |
| Defendant. | |

Plaintiff Karen Soliday brings this action on behalf of herself and all others similarly situated against Defendant EPETAH LLC d/b/a Balmbare. Plaintiff makes the following allegations pursuant to the investigation of her counsel and upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

1.      This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme.

2.      Defendant sells a wide range of nutritional supplements aimed at preventing hair loss through various online channels, including at its website, www.balmbare.com (the "Website"), and in advertisements on social-media sites, including Instagram. Whenever a consumer purchases Defendant's products – whether it be on the Website or through a social-media advertisement – Defendant surreptitiously enrolls the consumer in an automatically renewing "subscription" that, unbeknownst to the consumer at the time, results in a recurring charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method") every month, in perpetuity until canceled (the "Surprise Subscriptions").

3.      Prior to enrolling Plaintiff and its other customers into Surprise Subscriptions – and thereafter assessing each of their Payment Methods a recurring charge on a monthly basis – Defendant failed to provide the disclosures and authorizations required by California's Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code §§ 17600, *et seq.*, to any of these consumers.

4.      Pursuant to the ARL, online retailers that offer automatically renewing subscriptions to California consumers must: (i) provide the complete automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to completion of the enrollment process, *see* Cal. Bus. Prof. Code § 17602(a)(1); (ii) obtain consumers' affirmative consent prior to charging their Payment Methods in connection with the subscriptions, *see id.* § 17602(a)(2); and (iii) provide an acknowledgment that includes the automatic renewal offer terms and identifies a cost-effective, timely, and easy-to-use mechanism for consumers to cancel their subscriptions, *see id.* §§ 17602(a)(3), 17602(c).

5.      As discussed in greater detail below, the electronic "checkout flows" on Defendant's Website and social-media advertisements, which Plaintiff and numerous other California consumers used to purchase Defendant's products, uniformly violated each of these core requirements of the ARL. And when consumers eventually do realize that Defendant has enrolled them in Surprise Subscriptions without their authorization – such as when consumers notice Defendant's recurring charges on their credit card billing statements – Defendant then makes it exceedingly difficult and unnecessarily confusing for consumers to cancel the Surprise Subscriptions.

6.      Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Section 17602(a)(3). *See* Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3); *see also id.* § 17601(b)(1)-(5) (setting forth the definition of "automatic renewal offer terms" as used in Cal. Bus. Prof. Code § 17602(a)).  The standardized post-order acknowledgment email sends to its customers also fails to disclose a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation – making it exceedingly difficult and unnecessarily confusing for consumers to cancel Surprise Subscriptions – in clear violation of Section 17602(c) of the ARL.

7.      As a result of Defendant's violations of Section 17602 of the ARL, the Surprise Subscriptions are deemed "unconditional gifts" pursuant to Section 17603 of the ARL, entitling Plaintiff and the Class to restitution.  *See* Cal. Bus. & Prof. Code § 17603.

8.      Defendant's deceptive conduct in selling the Surprise Subscriptions does not stop there. In addition to violating the ARL, Defendant has engaged in a widespread deceptive pricing scheme to induce consumers to purchase its "promotional" Surprise Subscriptions by falsely advertising a massive "Buy 1 get 1 Free" discount from a purported regular price that Defendant

never charges, Defendant also represents that these offers are limited-time sales and uses countdown timers, even though the same sale is always available. This deceptive discount pricing scheme misleads reasonable consumers into believing they are receiving an extraordinary limited-time deal, and it violates California's prohibitions on false advertising and misleading pricing. Finally, Defendant imposes a mandatory insurance fee at the end of the checkout process in violation of California's laws and the Federal Trade Commission's ("FTC") regulations.

9.      For the foregoing reasons, Plaintiffs bring this action individually and on behalf of all subscribers of any of Defendant's Surprise Subscriptions who, within the applicable statute of limitations period up to and including the date of judgment in this action, were induced by Defendant's false sales or incurred unauthorized fees for the renewal of their Surprise Subscriptions.  Based on Defendant's unlawful conduct, Plaintiffs seek damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) negligent misrepresentation; (5) intentional misrepresentation; (7) unjust enrichment/restitution; (8) breach of contract; and (9) breach of express warranty.

## THE PARTIES

10.      Plaintiff Karen Soliday is, and at all times relevant hereto was, a citizen and resident of Los Angeles, California.  On or about September 8, 2025, Plaintiff made a purchase of a "Hair Revive Gummies" from Defendant via Instagram.  When Plaintiff made her purchase, Defendant enrolled Plaintiff in – unbeknownst to her at the time – a Surprise Subscription.  Consequently, following her purchase, Defendant assessed Plaintiff's Payment Method a recurring charge of $42.42 each month.  Promptly after noticing the recurring charges Defendant had made month over month to her Payment Method, Plaintiff canceled her Surprise Subscription. Had Plaintiff known that Defendant would enroll her in an automatically renewing Surprise Subscription, she would not have made a purchase from Defendant at all.

11.    Furthermore, at the time she made her purchase, Plaintiff saw and relied on Defendant's "Buy 1 get 1 Free" discounts depicted below. Had Plaintiff been aware that the limited-time sale was not genuine and that she was not actually receiving a time-limited deal, she would not have purchased the Surprise Subscription at all or on the same terms.  Plaintiff also paid a premium for the Surprise Subscription due to Defendant's false discount representations, time-pressure tactics, and misleading enrollment representations.

12.    Finally, during the checkout process, Defendant represented that the total price of the Surprise Subscription was $38.47. But at the end of the checkout, Defendant added a "Insured Shipping" fee of $3.95, making the actual ticket price $42.42, not $38.47, as Defendant had previously represented.  Plaintiff was harmed by paying Defendant's illegal and unfair junk fee. If Defendant had not used hidden fees, Plaintiff would have paid less for the Surprise Subscription.

13.    The facts giving rise to Plaintiff's claims are materially the same as those of other members of the Classes he seeks to represent

14.    Defendant EPETAH LLC d/b/a Balmbare is a Wyoming corporation that maintains its corporate headquarters and principal place of business in Santa Fe Springs, California. Defendant is an online-based retailer of nutritional supplements aimed at preventing hair loss, which it sells to consumers on its Website and through social-media advertisements to consumers nationwide, including throughout California.

15.    Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this is a putative class action where the aggregate amount sought by members of the proposed class exceeds $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different from Defendant.

17.    Personal jurisdiction and venue are proper because Plaintiff resides in Los Angeles, California, within this judicial District; because Plaintiff made her purchase of Defendant's products while she was physically present in Los Angeles, California; because Defendant shipped such goods to Plaintiff's residence in Los Angeles, California; and because Plaintiff was located in Los Angeles, California when Defendant enrolled her in, and thereafter charged her Payment Method on a monthly basis pursuant to, a Surprise Subscription.  Additionally, Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct, business in California, including within this judicial District, including through the promotion, marketing, and sale of its products.

## FACTUAL BACKGROUND

### A.    Background On the Subscription-Based e-Commerce Industry

18.    The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1]  Subscription e-commerce services now target a wide range of customers and cater to a variety of specific interests. Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years.  Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[2]  Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.5F[3]  That constitutes an average annual

---

[1] Core DNA, *How to Run an eCommerce Subscription Service: The Ultimate Guide* (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

[2] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[3] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%.").

*See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17, 2021),    https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-

growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally."[4]

19.    The production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to *Forbes*, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[6]  "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[7]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[8]

20.    The expansion of the subscription e-commerce market shows no signs of slowing.  "We're now in the subscriptions era, and the pandemic is accelerating its takeover.  During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[9]  According to *The Washington Post*,

---

the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now.  But Are You Reaping the Full Benefits?* (Oct. 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-now-but-are-you-reaping-the-full-benefits-02434851.

[4] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra* ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[5] Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[6] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra*.

[7] *Id*.

[8] *Id*.

[9] *Id*.

"[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[10]

21.    However, as *The Washington Post* has noted, there are downsides associated with the subscription-based business model.[11]  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[12]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[13]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[14]  As these companies have realized, "[t]he real money is in the inertia."[15]  As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative

---

[10] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[11] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[12] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[13] *Id.*

[14] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[15] *Id.*

designs."[16]  That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans.  They do this by intentionally confusing users with the design and flow of their website and apps, *e.g.*, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics," such as failure to fully disclose the terms of its automatic renewal programs.[17]

22.    To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[18]  Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[19]  For instance, numerous companies, including Defendant, have resorted to using "dark patterns" on their e-commerce platforms.  A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[20]  Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to

---

[16] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

[17] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[18] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra* ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

[19] *Id.*

[20] UX Design, *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull (PhD Cognitive Science), who coined the term "Dark Patters" in August 2010).

respond to a proliferation of abuses by some companies over the past few years[,]"[21] widespread utilization of misleading dark patterns and deliberate omissions persist.

23.    Defendant successfully capitalized on this demand. In fact, Defendant's growth in revenue and subscriber count with respect to its Subscriptions coincides with a sharp decline in subscriber satisfaction as the Subscriptions and the platforms from which they operate have become riddled with "dark patterns."  Specifically, Defendant has used various types of dark patterns, including but not limited to "Roach Motel,"[22] "Misdirection,"[23] and "Forced Continuity,"[24] in order to prevent users from canceling their Subscriptions by way of adopting complex cancellation procedures to increase the friction in the subscription cancellation process.  Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their Subscriptions. It has further led to an increase in accidental or unintentional sign-ups by consumers for paid Subscriptions, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.[25]

[21] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra*.

[22] "Roach Motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)." https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

[23] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]"  https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[24] One example of "Forced Continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal."  https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

[25] *See* Gizmodo, *Pervasive 'Dark Patterns' Are Fooling People Into Signing Up for Services They Don't Want* (Sep. 15, 2022), https://gizmodo.com/dark-patterns-ui-cancel-subscription-1849542166 ("As much as you think you have full control of you and your wallet, it's getting increasingly difficult for anybody using an app or a website to avoid getting suckered into surrendering your money or personal information to misleading or tricky UI design. … Tech companies and online retailers [] lure users into signing up for subscription services while obscuring costs or charges, then making it

24. As discussed below, Defendant has employed a host of dark patterns in its Website and social-media advertisements to lure and deceive millions of consumers into becoming and remaining enrolled in Surprise Subscriptions. That is the precise conduct that California's legislature sought to prevent in enacting California's Automatic Renewal Law.

**B. California's Automatic Renewal Law**

25. In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).

26. The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

> (2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

> (3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and

---

difficult to actually cancel. Some dark patterns include confusing users in dense terms of service to obscure key limitations of products or junk fees attached to their use.")

> allow the consumer to cancel, the automatic renewal or continuous
> service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

27.    The ARL also requires that, prior to the completion of the initial order for the automatic renewal or continuous service, sellers must explain the price to be charged when the promotion or free trial ends.  *See* Cal. Bus. & Prof. Code § 17602(a)(1), *supra*.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *See id*.  Sellers must also notify consumers in the acknowledgment about how to cancel the free trial before they are charged.  *See* Cal. Bus. & Prof. Code § 17602(a)(3), *supra*.

28.    Section 17602(c) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer **shall provide a toll-free telephone number, electronic mail address,** a postal address if the seller directly bills the consumer, **or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation** that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(c). (emphasis added).

29.    Additionally, the ARL also requires e-commerce sellers, doing business in California, to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(d) provides:

> [A] business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service *exclusively online*, *at will*, *and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately*.

Cal. Bus. & Prof. Code § 17602(d)(1) (emphasis added).

30.    The ARL further specifies that a seller who provides an automatic offer "shall provide a method of termination that is online in the form of either of the following: (A) A prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings[; or] (B) By an immediately accessible termination email

1   formatted and provided by the business that a consumer can send to the business without additional

2   information." Cal. Bus. & Prof. Code § 17602(d)(1)(A)-(B).

3        31.    Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or

4   arrangement in which a paid subscription or purchasing agreement is automatically renewed at the

5   end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a).

6        32.    Section 17601 of the ARL defines the term "Automatic renewal offer terms" as "the

7   following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will

8   continue until the consumer cancels.  (2) The description of the cancellation policy that applies to

9   the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or

10  payment account with a third party as part of the automatic renewal plan or arrangement, and that

11  the amount of the charge may change, if that is the case, and the amount to which the charge will

12  change, if known.  (4) The length of the automatic renewal term or that the service is continuous,

13  unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if

14  any." Cal. Bus. & Prof. Code § 1760, *et seq.*

15       33.    The ARL defines "clear and conspicuous" or "clearly and conspicuously" meaning

16  "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text

17  of the same size, or set off from the surrounding text of the same size by symbol ls or other marks,

18  in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601.

19       34.    Finally, Section 17603 of the ARL provides that where a "business sends any goods,

20  wares, merchandise, or products to a consumer, under a continuous service agreement or automatic

21  renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material

22  sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in

23  any manner he or she sees fit without any obligation whatsoever on the consumer's part to the

24  business[.]" Cal. Bus. & Prof. Code § 17603.

25       35.    As alleged below, Defendant's practices on the Website and its social-media

26  advertisements systematically violate Sections 17602(a)(l), 17602(a)(2), 17602(a)(3), 17602(c), and

27  17602(d) of the ARL.

28

1

**C.      Defendant's Business: The Subscription Enrollment Process**

2        36.      At all relevant times, Defendant offered, via the Website and through social-media

3    advertisements (including on Instagram), nutritional supplements aimed at preventing hair loss to

4    consumers.

5        37.      When a consumer purchases a product from Defendant on its website or through one

6    of its social-media advertisements, Defendant surreptitiously enrolls the consumer in a Surprise

7    Subscription that, unbeknownst to the consumer at the time, results in the consumer's Payment

8    Method being assessed a recurring charge each and every month, in perpetuity (or until canceled by

9    the consumer).

10       38.      Defendant's Surprise Subscriptions constitute automatic renewal and/or continuous

11   service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

12       39.      Regardless whether a consumer purchases a product from Defendant on its website

13   or through one of its social-media advertisements, the process of making the purchase – and

14   becoming unknowingly enrolled in a Surprise Subscription – is substantially the same. Upon

15   navigating the final screen of the checkout process (the "Checkout Page"), consumers are prompted

16   to input their name, address, other contact information, and the details of their chosen Payment

17   Method, and to finally click a giant green button at the bottom of the webpage to place their order.

18       40.      Defendant's Checkout Page fails to comply with the ARL in numerous respects.

19       41.      Prior to enrolling Plaintiff and other Californians in Surprise Subscriptions, the ARL

20   required Defendant to "present the automatic renewal offer terms or continuous service offer terms

21   in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and

22   in visual proximity[] … to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1)

23   (emphasis added). Under the ARL, a "clear and conspicuous" disclosure "means in larger type than

24   the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size,

25   or set off from the surrounding text of the same size by symbols or other marks, in a manner that

26   clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(3).

27       42.      On the Checkout Page, Defendant failed to present to Plaintiff or any member of the

28   Class the terms of the Surprise Subscription in "larger type than the surrounding text, or in

contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *See id.* Instead, the only statement provided on the Checkout Page concerning Surprise Subscriptions appeared in miniscule, inconspicuous font (much smaller than the surrounding text on the Checkout Page and without any emphasizing characteristics), ***below*** the giant blue button that consumers must click to place an order – and would only become visible on a consumer's screen if the consumer scrolled down on the Checkout Page past the green button. Similarly, for consumers who chose to proceed with the payment options above, they would not have seen the recurring charges ***at all*** unless they clicked on the inconspicuous dropdown button. A screenshot of the Checkout Page when a visitor arrives at the page, along with screenshots showing the Checkout Page after a visitor opens the hidden charges in the dropdown portion or if they scroll down far enough to see the statement below the blue button, are depicted below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






43.    Moreover, because a consumer navigating through the Checkout Page would have no need to open the dropdown box or scroll below the order-placement button to complete his or her purchase, there is no reason to believe that any consumer who placed an order on the Checkout Page ever saw the recurring charges statement before placing an order.

44.    Simply put: the statement concerning the Surprise Subscription that appeared below the green order-placement button was the exact opposite of the "clear and conspicuous" disclosure that the ARL demands. *See* Cal. Bus. & Prof. Code § 17601(a)(1).

45.    And because this statement was neither "clear [nor] conspicuous," Defendant failed to "first obtain[][any] consumer's affirmative consent to [any] agreement" with respect to the Surprise Subscription, let alone any such agreement "containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time." Cal. Bus. & Prof. Code § 17602(a)(2). Indeed, even the statement appearing in miniscule font below the blue button does not provide the exact amount of the recurring charges, the billing frequency, or a full description of the cancellation policy pertaining to the Surprise Subscription.

46.    Additionally, after enrolling a consumer in a Surprise Subscription, the ARL required Defendant to "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(3).

47.    After Plaintiff and members of the Class placed orders on the Checkout Page, Defendant sent them each the same pro forma e-mail regarding their purchase (the "Acknowledgment Email").

48.    The post-order Acknowledgment Emails that Defendant systematically sent to its customers (including to Plaintiff and all proposed Class members) uniformly failed to include "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer," as required by Cal. Bus. & Prof. Code § 17602(a)(3). Specifically, Defendant's Acknowledgment Emails failed to adequately disclose: that the Surprise Subscription "will continue until the consumer cancels[,]"

Cal. Bus. & Prof. Code § 17601(b)(1); a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, [and] if that is the case, and the amount to which the charge will change, Cal. Bus. & Prof. Code § 17601(b)(3); or "[t]he length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer[,]" Cal. Bus. & Prof. Code § 17601(b)(4). As with the Checkout Page, disclosures of these required automatic renewal terms are either missing altogether, are deceptively incomplete, objectively inaccurate, and/or are inconspicuously buried in the tiny fine print at the bottom of the Acknowledgement Email. Further, the Acknowledgment Emails fail to provide a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation of the Surprise Subscriptions, and, in fact, Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel Surprise Subscriptions. Accordingly, each of the Acknowledgment Emails that Defendant sent to Plaintiff and Class members violated sections 17602(a)(3), 17602(b), and 17602(c) of the ARL.

49. During the time period relevant to this action, the form and content of the Acknowledgment Email sent by Defendant to each member of the putative Class was the same, in all material respects, as the Acknowledgment Email that Defendant sent to Plaintiff.

50. In sum, during the relevant time period, Defendant's deficient pre- and post-purchase disclosures to Plaintiff and Class members concerning the Surprise Subscriptions were totally non-compliant with the ARL.

51. Because Defendant charged Plaintiff's and its other customers' Payment Methods in violation of the ARL, all goods, wares, merchandise, and/or products sent to Plaintiff and Class members upon the automatic renewal of their continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

52. As a direct result of Defendant's unlawful conduct described above, Plaintiff and putative Class members have incurred substantial financial injury in the form of all monies withdrawn from their Payment Methods in connection with the Surprise Subscriptions in which they were surreptitiously enrolled by Defendant.

1

**D.      California's and FTC's Ban on Fake Discounts and Hidden Fees**

2

*i. Fake sales are unfair and illegal*

3

53.      Advertised "sale" prices are important to consumers. Consumers are more likely to

4

purchase an item if they believe that they are getting a good deal. Further, if consumers think that a

5

sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy

6

something else. California law provides clear guidelines as to permissible and unlawful sales

7

tactics:

8

54.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with

9

misleading regular prices and deceptive discounts—is illegal.

10

55.      Section 17500 of California's False Advertising Law prohibits businesses from

11

making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code §

12

17500. This includes statements falsely suggesting that a product is on sale when it actually is not.

13

56.      Moreover, section 17501 of California's False Advertising Law provides that "[n]o

14

price shall be advertised as a former price … unless the alleged former price was the prevailing

15

market price … within three months next immediately preceding" the advertising. Cal. Bus. &

16

Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts,

17

California's False Advertising Law also specifically prohibits this particular flavor of fake

18

discount (where the advertised former price is not the prevailing price during the specified

19

timeframe).

20

57.      In addition, California's Consumers Legal Remedies Act prohibits "advertising

21

goods or services with intent not to sell them as advertised" and specifically prohibits "false or

22

misleading statements of fact concerning reasons for, existence of, or amounts of, price

23

reductions." Cal. Civ. Code § 1770(a)(9), (13).

24

58.      The Federal Trade Commission's regulations also prohibit false or misleading

25

"former price comparisons," for example, making up "an artificial, inflated price … for the

26

purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1.

27

They also prohibit false or misleading "retail price comparisons" and "comparable value

28

comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

59.    As numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

ii.    *Drip pricing is unfair and illegal*

60.    As more and more commerce has moved online, so too have manipulative design practices—termed 'dark patterns'" that "trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[26]

61.    One example of a dark pattern is drip pricing, in which companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[27] In the ticketing space, companies advertise one price for a ticket, and then load the purchase up with additional fees at the end of the checkout process. The goal of this is to conceal the true cost of the ticket and prevent comparison shopping. The consumer selects and decides to purchase the ticket based on a lower advertised price, but ends up paying more because of junk fees that are tacked on at the end.

62.    The Federal Trade Commission has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process."[28] "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already

---

[26] Bringing Dark Pattern to Light, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[27] *Id.*

[28] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

has spent significant time selecting and finalizing a product or service plan to purchase."[29] By then, consumers have already committed to the purchase.

63.    Drip pricing costs consumers a lot of money. For example, when buying tickets, consumers rely on the initial price, spend more money, and make purchases that they otherwise would not have made.[30]

64.    Drip pricing also harms consumers because it can "weaken competition by making it harder for consumers to price-compare across sellers. An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction."[31]

65.    Thus, the Federal Trade Commission has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price." "Failure to do so has the potential to deceive consumers in violation of the FTC Act."[32]

66.    Because drip pricing is unfair and deceptive, it is also illegal under the FTC Act. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." And, the FTC has "federal rule-making authority to issue industry wide regulations (Rules and Guides) to deal with common unfair or deceptive practices and unfair methods of competition."[33] Because drip pricing is unfair and deceptive in violation of the FTC Act, the FTC has proposed specific rules banning junk fees under its rulemaking authority.[34]

67.    Drip pricing is also illegal under California law, and has been for years.

---

[29] Bringing Dark Patterns to Light, FTC Staff Report, at 9 (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[30] *Id.* at 9.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] https://www.ftc.gov/enforcement/rulemaking

68.     Starting on July 1, 2024, drip pricing is illegal under the California Legal Remedies Act. SB 478 makes drip pricing—namely, "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" other than taxes and shipping—a violation of California's Consumers Legal Remedies Act. By making drip pricing a violation of the CLRA, SB 478 made punitive damages, attorneys fees, and statutory damages available to consumers who sue companies for this unfair and illegal practice.

69.     But, even before July 1, 2024, drip pricing was already illegal under California's other consumer protection statutes. As SB 478 expressly states, "This practice, like other forms of bait and switch advertising, is prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code)."[35] Thus, drip pricing has been illegal under California's other consumer protection statute for years.

**E.     Defendant's fake sales and hidden insurance fee are unlawful and misleading.**

70.     Defendant has long employed a deceptive "fake sale" pricing scheme to lure customers into purchasing its products. The scheme centers on advertising Surprise Subscription as being on sale at a steep discount – specifically, "Buy 1 get 1 Free" – all the time, thereby creating a false impression of a limited-time bargain.

71.     On its Website and promotional materials, Defendant prominently displays its false discount. For example, from at least 3 months prior to Plaintiff's purchase and through the filing of this Complaint, Defendant advertised a seasonal "Halloween Sale" of the price of two products valued at $77.48 for the price of $38.47.

---

[35] Consumers Legal Remedies Act: advertisements., CA S.B. 478, 2023.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20





21

22

23        72.    Reasonable consumers understand such representations to mean $77.48 is

24   Defendant's regular, non-sale price for two products, and that they are being given a time-limited

25   opportunity to buy them at a 50% discount from the regular price. A representation of "Buy 1 get 1

26   Free" plainly conveys that the consumer is getting a tremendous deal compared to what the

27   product or service normally costs.

28

73.    In reality, however, Defendant *never* charges $77.48 for two products from the Surprise Subscription. That price is fiction.

74.    In other words, the reference price of $77.48 is not the prevailing market price of two products from Surprise Subscription. Instead, it is an inflated reference point that Defendant uses to make its perpetual sale look legitimate. Thus, the price of two products ($77.48) is a former price that overstates the Surprise Subscription's true value and misleads consumers about the purported savings.

75.    In addition to its false and misleading $77.48 reference price, the "Buy 1 get 1 Free" sale is effectively never-ending. Each of these promotions implies that the discount is tied to a specific time frame or event and that after the event, the price may go back up. Defendant reinforces this impression by including timers directly adjacent to those promotions, urging consumers to act fast before the deal "expires." However, as soon as the timer runs out, it resets, and when one sale period ends, another begins. Investigations using the Internet Archive's Wayback Machine[36] confirms that Defendant's limited-time sale messaging has been present virtually continuously over the last year, simply rebranded for different seasons or promotions.

76.    This pattern persisted through 2025, with Defendant continuously marketing the "Buy 1 get 1 Free" discount under various pretexts. The nominal "countdown" clocks would reset or a new sale would be announced, but the bottom-line price to consumers ($38.47) remained essentially constant. Such conduct is the hallmark of a false sale scheme: the product is perpetually on "sale," so consumers never actually receive a genuine discount off a true regular price.

77.    To confirm that Defendant always offers the purported Buy 1 get 1 Free discount with countdown clocks for the Surprise Subscription, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine. That investigation confirms Defendant's perpetual sales in the same layout and design as the sampler pictures above.

---

[36] https://web.archive.org/web/20230415000000*/https://www.ultimate-guitar.com/ (last accessed October 28, 2025).

78.     Defendant's fake discount pricing scheme violates California's laws and FTC regulations. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Surprise Subscription, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the Website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the Website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives.

79.     Defendant's misrepresentations regarding the price and discount of the Surprise Subscription were material to consumers' decisions. A reasonable consumer attaches importance to whether an "Buy 1 get 1 Free" deal is genuine – such a deep discount implies huge savings and often triggers an urgent desire to buy now rather than later (to avoid missing out). As studies have found, "[n]early two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[37] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[38] Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[39]

80.     Had consumers known that the "Buy 1 get 1 Free" was always available for $38.47, and that the $77.48 reference price was false, they would not have been influenced by the

---

[37] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying behavior/.

[38] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news releases/retailmenot-surveydeals- and-promotional-offers-drive-incremental-purchases-online especially-among-millennial-buyers-300635775.html).

[39] 7https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

urgency or perceived value of the offer. As a result, Plaintiff and the Class members made a purchase they might have postponed or foregone and otherwise paid a premium for the Surprise Subscription due to Defendant's deceptive conduct.

81.    Finally, Defendant used drip pricing, and hid the true price of the Surprise Subscription until the purchase was almost complete. For each of its subscriptions, Defendant used drip pricing and added a mandatory "insurance" fee at the end of the checkout process. The example below is representative of the checkout process. In all relevant respects, throughout the entire statute of limitations period, the sales of the Surprise Subscription were substantially similar.

82.    When a consumer visited Defendant's Website, the homepage and checkout pages consistently advertised the Surprise Subscriptions for $38.47.



83.    In the final page of checkout, consumers are presented with an order summary with the total cost. In the example below, the breakdown of "Shipping Fees" revealed a $3.95 charge for "Insured Shipping & Handling." That is, the entire "Shipping Fees" in the example below was just

a mandatory service fee tacked on by Defendant (which could only be seen if consumers scrolled down unnecessarily).



84.    Defendant did not disclose the cost of this mandatory charge until several pages into the checkout process. This was after the consumer had invested a significant amount of time selecting and finalizing their purchase and had already decided to proceed. Only then, were they finally informed of an additional "Insured Shipping" of $3.95 in the final subtotal. Because Defendant waited until the end of the checkout process to disclose the true price, it was difficult for consumers to accurately compare Defendant's products to those of competitors. Not only does this frustrate comparison shopping, but this drip pricing also impedes competition and leads consumers to pay more for their Surprise Subscription than they otherwise would have.

85.    As set forth in further detail below, Plaintiff's claims, which are based on Defendant's failure to comply with the ARL and its use of false discounts and surprise fees constitute "unlawful" conduct under the UCL.  Further, because the Surprise Subscriptions were, by operation of law, "unconditional gifts" to Plaintiff and putative Class members (*see* Cal. Bus. & Prof. Code § 17603) – and thus Plaintiff and Class members already owned the goods, tools, and benefits of the subscriptions as their personal property at the time Defendant withdrew monies from their Payment Methods as consideration for access to the same, without any legal or contractual authority to do so

– Plaintiff's claims are also based on Defendant's practice of charging consumers in exchange for unconditional gifts and arise under the "fraudulent" and "unfair" prongs of the UCL.  Additionally, Plaintiff brings this action against Defendant for violations of the CLRA and FAL, and conversion, unjust enrichment, negligent misrepresentation, and fraud.

**No Adequate Remedy at Law**

86.    For their equitable relief claims, Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Classes are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL and UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

108.    Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Surprise Subscription are determined to be an amount less than the total expenditure in connection with that subscription. Without compensation for the full price of the Surprise Subscription, Plaintiff would be left without the parity in purchasing power to which they are entitled.

1

**CLASS ACTION ALLEGATIONS**

2          87.    ***Class Definition***.  Plaintiff brings this action on behalf of a class of similarly

3    situated individuals, defined as follows (collectively, the "Classes"):

4          (a)    ***ARL Class:*** All persons in the United States who, within the applicable limitation

5    period, up to and including the date of final judgment in this action, were charged a renewal fee for

6    a Surprise Subscription by Defendant.

7          88.    ***False Sales Class:*** All persons in the United States who, within the applicable

8    limitation period, up to and including the date of final judgment in this action, purchased the Surprise

9    Subscriptions at a purported discount.

10          89.    ***Hidden Fees Class:*** All persons in the United States who, within the applicable

11    limitation period, up to and including the date of final judgment in this action, purchased the Surprise

12    Subscriptions and were charged a mandatory "insurance" fee by Defendant at the end of the checkout

13    process.

14          90.    Plaintiff reserves the right to amend the definition of the Class if discovery or further

15    investigation reveals that the Class should be expanded or otherwise modified.

16          91.    Specifically excluded from the Classes are Defendant and any entities in which

17    Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this

18    action is assigned, members of the judge's staff, and the judge's immediate family.

19          92.    Plaintiff reserve the right to amend the definition of the Classes if discovery or

20    further investigation reveals that the Classes should be expanded or otherwise modified.

21          93.    ***Numerosity.***  The Classes are so numerous that their individual joinder herein is

22    impracticable.  On information and belief, the Classes comprise at least millions of consumers.

23    The precise number of the members of the Classes and their identities are unknown to Plaintiff at

24    this time but may be determined through discovery.  The members of the Classes may be notified

25    of the pendency of this action by mail and/or publication through the distribution records of

26    Defendant.

27          94.    ***Commonality and Predominance.***  Common questions of law and fact exist as to

28    all the members of the Classes and predominate over questions affecting only individual members.

Common legal and factual questions include, but are not limited to: (a) whether Defendant's Surprise Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and the ARL Class members' Payment Method for an automatic renewal or continuous service without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the ARL Class members, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's Surprise Subscriptions were sold at the reference price within 90 days of Plaintiff's and the False Sales Class members' purchases; (g) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (h) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (i) whether Plaintiff and the Classes are entitled to damages and/or restitution; (j) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (k) whether Plaintiff and the Classes are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

95.    **Typicality.**  The claims of Plaintiff are typical of the claims of the ARL Class in that Plaintiff and the ARL Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and the ARL Class members affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the Surprise Subscriptions before charging their Payment Methods. Similarly, the

claims of Plaintiff are typical of the claims of the members of the False Sales Class and Hidden Fees Class because, like other members of the False Sales Class, he purchased the Surprise Subscription relying on the representations and omissions made by Defendant that the Surprise Subscription was being sold at a discount from its false reference pricing and paid a mandatory insurance fee at the end of the checkout process.

96.     **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has no interests antagonistic to the Classes' interests, and Plaintiff has retained counsel that has considerable experience and success in prosecuting complex class actions and consumer-protection cases.

97.     **Superiority**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

98.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

99.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and the Classes and will likely retain the benefits of its wrongdoing.

100.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

**COUNT I**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On behalf of Plaintiff and the ARL Class)**

101.     Plaintiff re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

102.     Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant.

103.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

104.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and the members of the ARL Class.

105.    As alleged more fully above, Defendant violated, and continues to violate, section 17500 of the FAL through its misrepresentations and omissions made to consumers before and after enrollment into its Surprise Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  For instance, Defendant is silent regarding the material terms of its Surprise Subscriptions policies, including Defendant's unilateral rights to change the subscriptions' fees and billing practices, how and when to cancel them, and the consequences of doing so. These misrepresentations and omissions on the Checkout Page and the Acknowledgment Email constitute false and deceptive advertisements.

106.    Defendant's actions in violation of the FAL, as described herein, were false and misleading, such that the general public is and was likely to be deceived.

107.    Plaintiff and the members of the ARL Class did not learn of Defendant's automatic payment policies until after they had already signed up and started paying for Defendant's Surprise Subscriptions.

108.    As such, Plaintiff and the members of the ARL Class saw, read, and reasonably relied on Defendant's statements and omissions to their detriment.

109.    In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to enroll in the Surprise Subscriptions and deciding when to cancel them.

110.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the ARL Class.

111.    Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because they were induced to purchase Surprise Subscriptions and/or pay renewal fees they would not have otherwise paid. Had Defendant fully and clearly disclosed the terms associated with the Surprise Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Surprise Subscriptions, or they would have canceled their Surprise Subscriptions earlier, i.e., prior to the expiration of the initial subscription period.

112.    Plaintiff and the members of the ARL Class seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT II**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of Plaintiff and the False Sales Class)**

113.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

114.    Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant.

115.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

116.    The FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when

1   the alleged former price did prevail is clearly, exactly, and conspicuously stated in the

2   advertisement." See Cal. Bus. & Prof. Code § 17501.

3        117.    Defendant has violated Sections 17500 and 17501 of the California Business and

4   Professions Code.

5        118.    Defendant has violated, and continues to violate, section 17500 of the Business and

6   Professions Code by disseminating untrue and misleading advertisements to Plaintiff and the

7   members of the Classes.

8        119.    As alleged more fully above, Defendant advertises purported former prices along

9   with discounts for the Surprise Subscription. Defendant does this by representing that the

10  purported buy 1 get 1 free sale represents a specific percentage discount off the Surprise

11  Subscription's regular price (*i.e.*, 50% off). Defendant also advertises false seasonal themes and

12  fake countdown timers to create a sense of urgency. Reasonable consumers understand time-

13  limited discounts and reference pricing as indicating the "former" and "regular" prices—i.e., the

14  amounts charged by Defendant before the temporary discount was implemented and those to be

15  reinstated afterward.

16       120.    The reference prices advertised by Defendant are not the regular prices for the

17  Surprise Subscription because Defendant never charged the regular amount of two products for

18  any Surprise Subscription – that price is a fiction.  Moreover, for the same reasons, the reference

19  price was not the true former price of the Surprise Subscription, given the existence of perpetual

20  sales on Defendant's Website.  Accordingly, Defendant's statements about the former prices of its

21  Surprise Subscriptions, and its statements about its discounts from those former prices, were untrue

22  and misleading.  In addition, Defendant's statements that its discounts were available for a limited

23  time were also false and misleading and were designed to give consumers a sense of urgency

24  when, in fact, the purported sales price is perpetually available.

25       121.    Furthermore, Defendant has violated, and continues to violate, section 17501 of the

26  FAL by advertising former prices for the Surprise Subscription that were not the prevailing market

27  price within three months immediately preceding the advertising.  As explained above,

28  Defendant's advertised regular price for the Surprise Subscription, which reasonable consumers

would understand to denote its former price, was not its prevailing market price within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all

122.    Defendant's actions in violation of the FAL, as described herein, were false and misleading, such that the general public is and was likely to be deceived.

123.    Plaintiff and the members of the False Sales Class were not aware of Defendant's false discounts at the time they purchased the Surprise Subscription.

124.    As such, Plaintiff and the members of the False Sales Class saw, read, and reasonably relied on Defendant's statements and omissions to their detriment.

125.    In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to purchase the Surprise Subscription.

126.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the False Sales Class.

127.    Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Surprise Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Surprise Subscription because the it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

128.    Plaintiff and the members of the False Sales Class seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT III**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff and the ARL Class)**

129.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

130.    Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant.

131.    Plaintiff and the members of the ARL Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the ARL Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

132.    Defendant's selection and/or subscription offers and the other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the ARL Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

133.    The acts and practices of Defendant as described above were intended to deceive Plaintiff and the ARL Class as described herein, and have resulted, and will result, in damages to Plaintiff and the ARL Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's representations and omissions about the nature of the Surprise Subscriptions billing, cancellation, automatic payment terms, policies, and requirements conveyed that they have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

134.    Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because they were induced to purchase Surprise Subscriptions and/or pay renewal fees they would not have otherwise paid. Had Defendant fully and clearly disclosed the terms associated with the Surprise Subscriptions, Plaintiff and the members of the

ARL Class would not have subscribed to the Surprise Subscriptions, or they would have canceled their Surprise Subscriptions earlier, i.e., prior to the expiration of the initial subscription period.

135.    Plaintiff, on behalf of themselves and all other members of the ARL Class, seeks an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

136.    In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on November 10, 2025, informing Defendant of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend their complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

**COUNT IV**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff and the False Sales Class)**

137.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

138.    Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant.

139.    Plaintiff and the members of the False Sales Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the False Sales Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

140.    Defendant's selection and/or subscription offers and the other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the False Sales Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

141.    The acts and practices of Defendant as described above were intended to deceive Plaintiff and the False Sales Class as described herein, and have resulted, and will result, in damages to Plaintiff and the False Sales Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's representations and omissions about the nature of the Surprise Subscription's discounts conveyed that they have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) Defendant's acts and practices constitute "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," due to its false reference prices and fake limited-duration sales of its Surprise Subscription in violation of Cal. Civil Code § 1770(a)(13).

142.    Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Surprise Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Surprise Subscription because it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

143.    Plaintiff, on behalf of themselves and all other members of the Classes, seek an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

144.    In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on November 10, 2025, informing Defendant of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend their complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

**COUNT V**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff and the Hidden Fees Class)**

145.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

146.    Plaintiff brings this claim individually and on behalf of the members of the Hidden Fees Class against Defendant.

147.    Plaintiff and the Hidden Fees Class members are "consumers," as the term is defined by California Civil Code § 1761(d).

148.    Plaintiff and the Hidden Fees Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

149.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods or services to consumers.

150.    As alleged more fully above, Defendant advertised, displayed, and offered a price for a good or service that does not include all mandatory fees or charges.

151.    Defendant violated, and continues to violate, section 1770(a)(29) of the California Civil Code. Defendant violates this by advertising, displaying, or offering a price for its Surprise Subscriptions that do not all the mandatory fees or charges (other than taxes, government fees, postage, or carriage charges).

152.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

153.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Surprise Subscription. Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision.

154.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Surprise Subscriptions.

155.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Hidden Fees Class members.

156.    Plaintiff, on behalf of themselves and all other members of the Classes, seek an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

157.    In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on November 10, 2025, informing Defendant of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend their complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

### COUNT VI
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiff and the ARL Class)**

158.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

159.    Plaintiff brings this claim individually and on behalf of the members of the ARL Class against Defendant.

160.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]"  Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus.

& Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

161.    As alleged in detail above, and incorporated herein by reference, Defendant's deceptive enrollment process and false sales of the Surprise Subscriptions violate the UCL's proscription against engaging in Unlawful Business Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, et seq.; CLRA, Cal. Civ. Code § 1770, et seq.; the ARL, Cal. Bus. & Prof. Code § 17602, et seq.; and ROSCA, 15 U.S.C. § 8403 ,et seq.

162.    As alleged in detail above, Defendant violated the ARL and ROSCA by failing to: (a) provide the auto-renewal terms associated with its Surprise Subscriptions "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Methods, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Surprise Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

163.    Each of these acts and practices constitutes an independent violation of the ARL, ROSCA, the FAL, and CLRA, and thus an independent violation of the UCL.

164.    Defendant has also violated the UCL's proscription against engaging **in Unfair Business Practices.**  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

165.    There is no public utility to Defendant's illegal automatic renewal practices and. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason thereof, particularly considering the available legal alternatives for subscriptions in the marketplace. Defendant's illegal auto-renewal and false sales practices only injure healthy competition and harm consumers.

166.    Plaintiff and the ARL Class could not have reasonably avoided this injury. Defendant's representations and omissions were deceptive to reasonable consumers like Plaintiff and the ARL Class members.

167.    Defendant also violated established public policy by violating the ARL, FAL, CLRA, and ROSCA. The unfairness of these practices is tethered to the legislatively declared policy from each of those statutes.

168.    Defendant has also violated the UCL's proscription against engaging **in Deceptive Business Practices.**  As alleged in detail above, Defendant committed deceptive acts by enrolling consumers in automatically recurring subscriptions in violation of the FAL, CLRA, ARL and ROSCA.

169.    Specifically, Defendant committed deceptive acts by including misleading language and omitting material facts about the auto-renewal features of the Surprise Subscriptions. These representations were false and misleading.

170.    Defendant's representations were misleading to Plaintiff and other reasonable consumers.

* * *

171.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when enrolling in their Surprise Subscriptions. Defendant's representations were a substantial factor in Plaintiff's purchasing decisions.

172.    In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to enroll in the Surprise Subscriptions and deciding when to cancel them.

173.    Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Surprise Subscriptions are still used by Defendant today.

174.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the ARL Class.

175.    Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because they were induced to purchase Surprise Subscriptions and/or pay renewal fees they would not have otherwise paid.  Had Defendant fully and clearly disclosed the terms associated with the Surprise Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Surprise Subscriptions, or they would have canceled their Surprise Subscriptions earlier, i.e., prior to the expiration of the initial subscription period.

176.    Furthermore, Plaintiff and the members of the ARL Class suffered economic injury as a direct result of Defendant's conduct because all products received from Defendant in violation of the ARL constitute "unconditional gifts."  See Cal. Bus. Prof. Code § 17603. As such, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the ARL Class members in the form of payments made by Plaintiff and the ARL Class members for their Surprise Subscriptions.

177.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the ARL Class members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT VII**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiff and the False Sales Class)**

178.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

1    179.    Plaintiff brings this claim individually and on behalf of the members of the False

2    Sales Class against Defendant.

3    180.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

4    fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

5    act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in

6    fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus.

7    & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and

8    others similarly situated who are affected by the unlawful and/or unfair business practice or act.

9    181.    As alleged in detail above, and incorporated herein by reference, Defendant's false

10   sales of the Surprise Subscription violate the UCL's proscription against engaging in **Unlawful**

11   **Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, et seq.;

12   CLRA, Cal. Civ. Code §§ 1770-01, et seq.; and the FTC, 16 C.F.R. § 233.1, et seq.

13   182.    As alleged in detail above, Defendant's false discounts and deceptive strike-through

14   pricing of the Surprise Subscription violate Sections 17500 and 17501 of the FAL (Cal. Bus. &

15   Prof. Code §§ 17500-1) and Sections § 1770(a)(5), (9) and (13) of the CLRA. Cal. Civil Code §

16   1770. Furthermore, Defendant's false sales also violate Sections 233.1 and 233.2 of the FTC's

17   regulations. 16 C.F.R. § 233.1

18   183.    Each of these acts and practices constitutes an independent violation of the FAL,

19   CLRA, and FTC regulations and thus an independent violation of the UCL.

20   184.    Defendant has also violated the UCL's proscription against engaging **in Unfair**

21   **Business Practices.**  Defendant's acts, omissions, misrepresentations, practices and non-

22   disclosures as alleged herein also constitute "unfair" business acts and practices within the

23   meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is

24   substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive,

25   and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such

26   conduct.

27   185.    There is no public utility to Defendant's false discounts. The gravity of the

28   consequences of Defendant's conduct as described above outweigh any justification, motive, or

1    reason thereof, particularly considering the available legal alternatives for sales offerings which

2    exist in the marketplace. Defendant's false sales practices only injure healthy competition and

3    harm consumers.

4         186.    Plaintiff and the False Sales Class members could not have reasonably avoided this

5    injury. Defendant's representations and omissions were deceptive to reasonable consumers like

6    Plaintiff and the False Sales Class.

7         187.    Defendant also violated established public policy by violating the FAL, CLRA, and

8    FTC's regulations. The unfairness of these practices is tethered to the legislatively declared policy

9    from each of those statutes.

10        188.    Defendant has also violated the UCL's proscription against engaging **in Deceptive**

11   **Business Practices.**  As alleged in detail above, Defendant committed deceptive acts by marketing

12   false discounts in violation of the FAL, CLRA, and FTC regulations.

13        189.    Specifically, Defendant committed deceptive acts by misrepresenting that the

14   Surprise Subscription was on sale, that the sale was time-limited, that it had a specific regular

15   price, and that consumers were receiving discounts. These representations were false and

16   misleading.

17        190.    Defendant's representations were misleading to Plaintiff and other reasonable

18   consumers.

19                                            * * *

20        191.    For all prongs, Defendant's representations were intended to induce reliance, and

21   Plaintiff saw, read, and reasonably relied on them when purchasing the Surprise Subscription.

22   Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

23        192.    In addition, class-wide reliance can be inferred because Defendant's representations

24   were material, i.e., a reasonable consumer would consider them important in deciding whether to

25   purchase the Surprise Subscription.

26        193.    Defendant's violations have continuing and adverse effects because Defendant's

27   unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful

28   course of conduct.  The public and the False Sales Class members are subject to ongoing harm

1      because the unlawful and/or unfair business practices associated with the Surprise Subscription are

2      still used by Defendant today.

3            194.    Defendant's representations were a substantial factor and proximate cause in

4      causing damages and losses to Plaintiff and the members of the False Sales Class.

5            195.    Plaintiff and the members of the False Sales Class were injured as a direct and

6      proximate result of Defendant's conduct because (a) they would not have purchased the Surprise

7      Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid

8      for the Surprise Subscription because the it was sold at a price premium due to the

9      misrepresentation, and/or (c) they did not receive the discounts they were promised, and received

10     subscriptions with market values lower than the promised market values.

11           196.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the

12     False Sales Class seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT VIII**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff and the Hidden Fees Class)**

15           197.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the

16     preceding paragraphs as though alleged in this Count.

17           198.    Plaintiff brings this claim individually and on behalf of the members of the Hidden

18     Fees Class against Defendant.

19           199.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

20     fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

21     act[.]"  Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in

22     fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus.

23     & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and

24     others similarly situated who are affected by the unlawful and/or unfair business practice or act.

25           200.    As alleged in detail above, and incorporated herein by reference, Defendant's false

26     sales of the Surprise Subscription violate the UCL's proscription against engaging in **Unlawful**

1    **Business Practices** through its violations of the CLRA, Cal. Civ. Code § 1770(a)(29); and the

2    FTC, 15 U.S.C. § 45(a), et seq.

3         201.   Each of these acts and practices constitutes an independent violation of the FAL,

4    CLRA, and FTC regulations and thus an independent violation of the UCL.

5         202.   Defendant has also violated the UCL's proscription against engaging **in Unfair**

6    **Business Practices.**   Defendant's acts, omissions, misrepresentations, practices and non-

7    disclosures as alleged herein also constitute "unfair" business acts and practices within the

8    meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is

9    substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive,

10   and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such

11   conduct.

12        203.   There is no public utility to Defendant's mandatory fees. The gravity of the

13   consequences of Defendant's conduct as described above outweigh any justification, motive, or

14   reason thereof, particularly considering the available legal alternatives for sales offerings which

15   exist in the marketplace. Defendant's hidden and mandatory fees practices only injure healthy

16   competition and harm consumers.

17        204.   Plaintiff and the Hidden Fees Class members could not have reasonably avoided

18   this injury. Defendant's representations and omissions were deceptive to reasonable consumers

19   like Plaintiff and the Hidden Fees Class.

20        205.   Defendant also violated established public policy by violating the CLRA and FTC's

21   regulations. The unfairness of these practices is tethered to the legislatively declared policy from

22   each of those statutes.

23        206.   Defendant has also violated the UCL's proscription against engaging **in Deceptive**

24   **Business Practices.**   As alleged in detail above, Defendant committed deceptive acts by marketing

25   false discounts in violation of the CLRA and FTC regulations.

26        207.   Specifically, Defendant committed deceptive acts by charging mandatory hidden

27   fees at the last step of its checkout process for the Surprise Subscriptions.

28

208.    Defendant's representations were misleading to Plaintiff and other reasonable consumers.

* * *

209.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Surprise Subscription. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

210.    In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to purchase the Surprise Subscription.

211.    Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Hidden Fees Class members are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Surprise Subscription are still used by Defendant today.

212.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the Hidden Fees Class.

213.    Plaintiff and the members of the Hidden Fees Class were injured as a direct and proximate result of Defendant's conduct because they were charged for unexpected mandatory fees at the end of their checkout process.

214.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the Hidden Sales Class seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT IX**
**Negligent Misrepresentation**
**(On behalf of Plaintiff and the ARL Class)**

215.    Plaintiff hereby re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

216.    Plaintiff bring this claim individually and on behalf of the members of the ARL Class against Defendant under the laws of California.

217.    As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the ARL Class concerning the Surprise Subscriptions' billing, cancellation, automatic payment terms, policies, and requirements.

218.    These representations were false.

219.    When Defendant made these misrepresentations and material omissions of fact, it knew or should have known that they were false or misleading. Defendant had no reasonable grounds for believing that these representations were true or that the material omissions were not misleading when made.

220.    Defendant intended that Plaintiff and ARL Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

221.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to enroll in Defendant's Surprise Subscriptions.

222.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the ARL Class members.

223.    Plaintiff and the members of the ARL Class suffered economic injury as a direct and proximate result of Defendant's conduct because they were induced to purchase Surprise Subscriptions and/or pay renewal fees they would not have otherwise paid. Had Defendant fully and clearly disclosed the terms associated with the Surprise Subscriptions, Plaintiff and the members of the ARL Class would not have subscribed to the Surprise Subscriptions, or they would have canceled their Surprise Subscriptions earlier, i.e., prior to the expiration of the initial subscription period.

224.    For the negligent misrepresentation claims, Plaintiff seek all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the AL Class as a result of Defendant's unlawful conduct.

1

**COUNT X**
**Negligent Misrepresentation**
**(On behalf of Plaintiff and the False Sales Class)**

2

3      225.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in

4      all preceding paragraphs of this complaint.

5      226.    Plaintiff brings this claim individually and on behalf of the members of the False

6      Sales Class against Defendant under the laws of California.

7      227.    As discussed above, Defendant made false representations and material omissions

8      of fact to Plaintiff and the False Sales Class concerning the Discounted Surprise Subscriptions'

9      discounts and reference prices.

10     228.    These representations were false.

11     229.     When Defendant made these misrepresentations and material omissions of fact, it

12     knew or should have known that they were false or misleading. Defendant had no reasonable

13     grounds for believing that these representations were true or that the material omissions were not

14     misleading when made.

15     230.    Defendant intended that Plaintiff and the False Sales Class members rely on these

16     representations and material omissions of fact and Plaintiff reasonably relied on them.

17     231.    In addition, class-wide reliance can be inferred because Defendant's

18     misrepresentations and omissions were material, i.e., a reasonable consumer would consider them

19     important in deciding whether to purchase Defendant's Surprise Subscription.

20     232.    Defendant's misrepresentations and omissions were a substantial factor and

21     proximate cause in causing damages and losses to Plaintiff and the False Sales Class members.

22     233.     Plaintiff and the members of the False Sales Class were injured as a direct and

23     proximate result of Defendant's conduct because (a) they would not have purchased the Surprise

24     Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid

25     for the Surprise Subscription because the it was sold at a price premium due to the

26     misrepresentation, and/or (c) they did not receive the discounts they were promised, and received

27     subscriptions with market values lower than the promised market values.

28

234.    For the negligent misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct,

**COUNT XI**
**Intentional Misrepresentation**
**(On behalf of Plaintiff and the ARL Class)**

235.    Plaintiff hereby re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

236.    Plaintiff bring this claim individually and on behalf of the members of the ARL Class against Defendant under the laws of California.

237.    As discussed above, Defendant made false representations and material omissions of fact to Plaintiff and the ARL Class concerning the Surprise Subscriptions' billing, cancellation, automatic payment terms, policies, and requirements.

238.    These representations and material omissions of fact were false and misleading.

239.    When Defendant made these misrepresentations and material omissions of fact, it knew that they were false and misleading at the time they were made and/or Defendant acted recklessly in making the misrepresentations and omissions.

240.    Defendant intended that Plaintiff and the members of the ARL Class members rely on these representations and material omissions of fact and Plaintiff reasonably relied on them.

241.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to enroll in Defendant's Surprise Subscriptions.

242.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the ARL Class.

243.    Plaintiff and the members of the ARL Class suffered economic injury as a direct and proximate result of Defendant's conduct because they were induced to purchase Surprise Subscriptions and/or pay renewal fees they would not have otherwise paid.  Had Defendant fully and clearly disclosed the terms associated with the Surprise Subscriptions, Plaintiff and the

1    members of the ARL Class would not have subscribed to the Surprise Subscriptions, or they would

2    have canceled their Surprise Subscriptions earlier, i.e., prior to the expiration of the initial

3    subscription period.

4          244.    For the intentional misrepresentation claims, Plaintiff seeks all damages available,

5    including expectation damages, punitive damages, and/or damages measured by the price premium

6    charged to Plaintiff and the Classes as a result of Defendant's unlawful conduct.

7                                    **COUNT XII**
                              **Intentional Misrepresentation**
8                  **(On behalf of Plaintiff and the False Sales Class)**

9          245.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in

10   all preceding paragraphs of this complaint.

11         246.    Plaintiff brings this claim individually and on behalf of the members of the False

12   Sales Class against Defendant under the laws of California.

13         247.    As discussed above, Defendant made false representations and material omissions

14   of fact to Plaintiff and the False Sales Class concerning the Discounted Surprise Subscriptions'

15   discounts and reference prices.

16         248.    These representations and material omissions of fact were false and misleading.

17         249.    When Defendant made these misrepresentations and material omissions of fact, it

18   knew that they were false and misleading at the time they were made and/or Defendant acted

19   recklessly in making the misrepresentations and omissions.

20         250.    Defendant intended that Plaintiff and the False Sales Class members rely on these

21   representations and material omissions of fact and Plaintiff reasonably relied on them.

22         251.    In addition, class-wide reliance can be inferred because Defendant's

23   misrepresentations and omissions were material, i.e., a reasonable consumer would consider them

24   important in deciding whether to purchase Defendant's Surprise Subscription.

25         252.    Defendant's misrepresentations and omissions were a substantial factor and

26   proximate cause in causing damages and losses to Plaintiff and the False Sales Class members.

27

28

253.     Plaintiff and the members of the False Sales Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Surprise Subscription if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Surprise Subscription because the it was sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received subscriptions with market values lower than the promised market values.

254.     For the intentional misrepresentation claims, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct.

## COUNV XIII
### Unjust Enrichment / Restitution
### (On behalf of Plaintiff and the ARL Class)

255.     Plaintiff re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

256.     Plaintiff bring this claim individually and on behalf of the members of the ARL Class against Defendant under the laws of California, in the alternative.

257.     Plaintiff and the Classes conferred benefits on Defendant by purchasing the Surprise Subscriptions.

258.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the ARL Class purchases of the Surprise Subscriptions.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's misrepresentations and material omissions of fact regarding the Surprise Subscriptions, in violation of California and federal laws, induced Plaintiff and the members of the ARL Class to purchase the Surprise Subscriptions under false pretenses.  These material misrepresentations and omissions of fact caused injuries to Plaintiff and the members of the ARL Class because they would not have purchased the Surprise Subscriptions at all, or on the same terms, if the true facts were known.

259.     Due to Defendant's misrepresentations and violation of California and federal laws, its contracts with Plaintiff and the members of the ARL Class are void or voidable.

260.    Plaintiff and the members of the ARL Class seek restitution, and in the alternative, rescission.

261.     For the quasi-contract/unjust enrichment claims, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the members of the ARL Class as a result of Defendant's unlawful conduct.

**COUNV XIV**
**Breach of Contract**
**(On behalf of Plaintiff and the False Sales Class)**

262.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

263.    Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant under the laws of California.

264.    Plaintiff and the False Sales Class members entered into contracts with Defendant when they placed orders to purchase the Surprise Subscription.

265.    The contracts provided that Plaintiff and the False Sales Class members would pay Defendant for the Surprise Subscription ordered.

266.    The contracts further required that Defendant provide Plaintiff and the False Sales Class members with a Surprise Subscription that has a market value equal to the regular prices displayed on the Website. They also required that Defendant provide Plaintiff and the False Sales Class members with the discount equal to the difference between the price paid and the regular prices advertised. These were specific and material terms of the contract.

267.    The listed regular price, and specific discounts, were a specific and material term of each contract, and were displayed to Plaintiff and the False Sales Class members at the time they placed their orders.

268.    Plaintiff and the False Sales Class members paid Defendant for the Surprise Subscription they ordered, and satisfied all other conditions of their contracts.

269.    Defendant breached the contracts with Plaintiff and the False Sales Class members by failing to provide the Surprise Subscription that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its Website, and by failing to provide the promised discount.

270.    Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's California headquarters and to Defendant's California registered agent on November 10, 2025.

271.    As a direct and proximate result of Defendant's breaches, Plaintiff and the False Sales Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

272.    For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct.

## COUNV XV
### Breach of Express Warranty
### (On behalf of Plaintiff and the False Sales Class)

273.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

274.    Plaintiff brings this claim individually and on behalf of the members of the False Sales Class against Defendant under the law of California.

275.    Defendant, as the marketer, distributor, supplier, and seller of the Surprise Subscription, issued material, written warranties by advertising that the Surprise Subscription had a market value equal to the regular price displayed on Defendant's Website. This was an affirmation of fact about the Surprise Subscription (i.e., a representation about the market value) and a promise relating to the goods.

276.    This warranty was part of the basis of the bargain and Plaintiff and members of the False Sales Class relied on this warranty.

277.    In fact, the stated market value was not the market value. Thus, the warranty was breached.

278.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's California headquarters and to Defendant's California registered agent on November 10, 2025.

279.    Plaintiff and the False Sales Class members were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Surprise Subscription if they had known that the warranty was false, (b) they overpaid for the Surprise Subscription because the Surprise Subscription was sold at a price premium due to the warranty, and/or (c) they did not receive the Surprise Subscription as warranted that they were promised.

280.    For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the False Sales Class as a result of Defendant's unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the Classes and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Classes;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.    For actual, expectation, reliance, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For recission, restitution and all other forms of equitable relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.     For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

### DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 10, 2025                    Respectfully submitted,


                                       By:    _/s/ Frank S. Hedin_                -
                                              Frank S. Hedin (SBN 291289)
                                              **HEDIN LLP**
                                              1395 Brickell Ave., Suite 610
                                              Miami, Florida 33131-3302
                                              Telephone: (305) 357-2107
                                              Facsimile: (305) 200-8801
                                              E-Mail: fhedin@hedinllp.com

                                              **-and-**

                                              **GUCOVSCHI LAW FIRM, PLLC.**
                                              Adrian Gucovschi (SBN 360988)
                                              140 Broadway, Fl. 46
                                              New York, NY 10005
                                              Telephone: (212) 884-4230
                                              Facsimile: (212) 884-4230
                                              E-Mail: adrian@gucovschilaw.com

                                              *Attorney for Plaintiff*

1

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

2

I, Frank S. Hedin, declare as follows:

3

1.      I am an attorney at law licensed to practice in the State of California and a member

4

of the bar of this Court.

5

I am a partner at Hedin LLP, counsel of record for Plaintiff Karen Soliday in this action.

6

Plaintiff alleges that she is a citizen of California who resides in Los Angeles, California.  I have

7

personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and

8

would competently testify thereto under oath.

9

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code

10

Section 1780(d) in that Defendant EPETAH LLC d/b/a Balmbare regularly does business in the

11

Central District of California, and a substantial portion of the events alleged in the Complaint,

12

including the same misrepresentations, omissions, and injures as alleged herein, have occurred in

13

this judicial District.

14

I declare under the penalty of perjury under the laws of the State of California and the United

15

States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida,

16

on November 10, 2025.

17

18

*/s/ Frank S. Hedin*
Frank S. Hedin

19

20

21

22

23

24

25

26

27

28